# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 00-0258-CV-W-FJG ) |
| LEDAR TRANSPORT, et al., | ) ) ) |
| Defendants. | ) |

# ORDER

Currently pending before the Court is plaintiffs' Motion for Attorney Fees and Expenses (Doc. # 450) and plaintiffs' Motion to Compel (Doc. # 464).

## I. BACKGROUND

On March 17, 2000, plaintiffs filed a class action complaint on behalf of themselves and all those similarly situated against Ledar Transport, Inc. Plaintiffs sued Ledar for violations of the Truth-in-Leasing Regulations which govern the terms and conditions under which truck owner-operators lease equipment to authorized motor carriers for the transport of goods. On April 17, 2000, plaintiffs moved for a preliminary injunction. The Court heard argument on the motion and entered a preliminary injunction against Ledar on November 3, 2000. Plaintiffs moved to amend their Complaint on February 1, 2001 to name additional defendants Carl Higgs, Scott Higgs, Alice Norma Higgs and Hawthorne Leasing, Inc. The motion to amend was granted on May 2, 2001. Plaintiffs moved for class certification on June 6, 2001. The motion was granted on March 31, 2002. The parties filed cross-motions for summary judgment on

liability on March 28, 2003.  On January 7, 2004, the Court denied defendants' motion for summary judgment and granted in part plaintiffs' motion for summary judgment.  The Court also granted plaintiffs' motions to dismiss counterclaims against the named plaintiffs as well as counterclaims against the Class.  A three day bench trial was held on August 30, 2004 on liability issues only.  The Court issued Findings of Fact and Conclusions of Law on December 30, 2004.  The Court determined that Ledar's lease agreement with plaintiffs and class members violated the federal leasing regulations.  Additionally, the Court determined that defendants Ledar and Hawthorne Leasing were instrumentalities of defendants Carl, Scott and Norma Higgs and held that the individual defendants were personally liable for Ledar's violations of the leasing regulations.  Plaintiffs filed a motion for summary judgment on damages on April 26, 2007.  The Court entered Findings of Fact and Conclusions of Law on March 31, 2008.  Plaintiffs and class members requested $996,601.53 in damages.  The Court awarded plaintiffs the total amount of damages requested.

## II. DISCUSSION

### A.  Attorney Fees

The Truth-in-Leasing regulations state:

> The district court shall award a reasonable attorney's fee under this section.  The district court shall tax and collect that fee as part of the costs of the action.

49 U.S.C. § 14704(e).

> '[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'  Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours

reasonably expended by the reasonable hourly rates. See Hensley, 461 U.S. at 433, 103 S.Ct. 1933.

Hite v. Vermeer Manufacturing Co., 361 F.Supp.2d 935, 951-52 (S.D.Iowa 2005), aff'd, 446 F.3d 858 (8th Cir. 2006).

> The Eighth Circuit had adopted the guidelines for attorney's fees set forth by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). . . . In assessing attorney's fees, the district court must consider the following twelve factors: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases. . . . Under the Johnson standards, the minimum award should generally be not less than the number of hours claimed times the attorney's regular hourly rate. . . . This statement, however, [is] not a complete limitation on the district court's discretion to award only reasonable attorney fees, but only a general guideline to be followed in the absence of unusual circumstances.

Id. at 952 (internal citations and quotations omitted).

Through April 2008, plaintiffs' counsel state they have spent 4,959.7 hours in attorney time and have billed a total of $1,280,327 in attorneys' fees. The time spent and the fees billed are supported by an affidavit of Paul D. Cullen, Sr. Plaintiffs state that they have incurred litigation expenses in the amount of $184,875.50. Plaintiffs initially sought an award of $1,465,202.50. In their reply suggestions, in response to defendants' objections, plaintiffs have withdrawn their request for reimbursement of expert witness fees ($49,488.66) and computer related research fees ($28,288.56).

Defendants have raised three objections to the plaintiffs' motion: 1) The hourly wage requested is too high; 2) Plaintiffs' attorneys over-lawyered the case; 3) Class

Case 4:00-cv-00258-FJG   Document 476   Filed 03/24/09   Page 3 of 10

Counsel are only entitled to costs listed in 28 U.S.C. § 1920.

### 1. Hourly Fee

Defendants argue that the rates charged by class counsel are excessive. Plaintiffs' counsel are located in Washington D.C. and defendants state that the D.C. rates are excessive compared with the rates charged by attorneys in the Kansas City market. Defendants argue that because the case was litigated in Kansas City, attorney fees should be determined by the prevailing rates in Kansas City. Defendants state that Paul Cullen charged $350.00 per hour, James Whittle billed $250.00 an hour and David Cohen billed $325.00 an hour. Defendants argue that John C. Dods, III, local counsel for plaintiffs, only billed $250.00 an hour and that this is the highest rate which should be allowed.

In response, plaintiffs state that the Eighth Circuit has recognized that in cases where counsel has special expertise, the court may award fees based on a geographic market beyond the locality where the litigation occurred. Plaintiffs state that the Cullen Law Firm has special expertise in litigating cases seeking to enforce the Truth-in-Leasing regulations. Additionally, plaintiffs state that their rates are well below prevailing rates for other Washington, D.C. law firms. In support of this plaintiffs have attached a Legal Services survey of legal billing rates for 2003, which show rates substantially higher than $250.00 an hour. In Hendrickson v. Branstad, 934 F.2d 158 (8th Cir. 1991), the Court stated, "[i]n determining whether a fee is reasonable, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." Id. at 164 (internal citations and quotations omitted).

The Court finds that the rates charged by plaintiffs, are not excessive for the Kansas City legal community. Especially, considering that local counsel for plaintiffs

billed $250.00 per hour. Accordingly, the Court will allow plaintiffs' counsel to charge the rates reflected in their Motion.

### 2. Plaintiffs' Attorneys "Over-lawyered" the Case

Defendants also argue that plaintiffs' lawyers fees should be reduced because the amount includes many hours billed to claims which are unrelated to the actual claims litigated. Defendants state that plaintiffs' counsel have included in their fee request a significant amount of hours expended on "frivolous claims that were ultimately never brought before the court. These claims were factually and legally unrelated to the issues eventually litigated that any hours spent pursuing these claims should be disregarded in the lodestar amount." (Defendants' Suggestions in Opposition, p. 6). Another example of "over-lawyering" defendants argue is when two attorneys, who billed over $300.00 an hour attended the deposition of plaintiff Gary Doss. Defendants also argue the plaintiffs counsel spent excessive time drafting the complaint (120.6), drafting the motion for summary judgment (287.8) and drafting the trial brief (54.9). Defendants argue that plaintiffs ultimately recovered only a fraction of the claims pled, investigated and litigated and thus the Court should reduce the amount awarded.

In reply, plaintiffs state that all of the claims which were pled were brought before the Court in the eight years that this case was litigated. With regard to the allegations of overcharging, plaintiffs state that two attorneys attended the deposition of Gary Doss, as he was a former employee of Ledar who provided critical testimony. With regard to the amount of time spent to complete certain tasks, plaintiffs' counsel states that 120 hours were spent drafting both the original and the amended complaint and that both of these complaints contained many detailed factual allegations and legal theories. As to the amount of time spent on the summary judgment motions, plaintiffs'

counsel state that they spent time drafting plaintiffs' motion for partial summary judgment as well as a significant amount of time responding to defendants' cross-motion for summary judgment.

Even though defendants state that plaintiffs' counsel spent an excessive amount of time on frivolous claims which were never brought before the Court, defendants fail to explain or describe what these "frivolous claims" were. Plaintiffs were very successful on their claims and the Court did not dismiss any claims as "frivolous." However, the Court does agree with defendants that some of the fees charged by plaintiffs were excessive. The Court has reviewed the extensive billing records submitted by plaintiffs and found numerous excessive charges. Examples include almost 45 hours billed for legal research regarding UCC violations and contract law in Missouri, unconscionability, res judicata, claim preclusion, Missouri torts, fraud and secured transactions. Another entry was for 12 hours spent "finalizing class complaint and send to local counsel for filing; communicate with outside attorney regarding lease-purchase agreements and security agreements." There were several entries relating to the preparation and revision of the motion for Preliminary Injunction, totaling 78 hours. There were numerous other entries for excessive time spent during various phases of the case. The total of these excessive charges amounted to $242,266.00 or roughly 16.5 % of the total fees requested by plaintiff. Rather than analyzing each individual excessive charge, the Court will reduce plaintiff's fees by 16.5 % to account for the "over-lawyering." The original amount requested by plaintiffs was $1,465,202.50. This figured has been reduced by 16.5% or $241,758.41, which represents the percentage of the fees which the Court found to be excessive. Therefore, the total amount of attorney fees which the Court will award is: $1,223,444.09.

6

### 3. Award of Costs

As noted previously, the Truth in Leasing regulations state: "The district court shall award a reasonable attorney's fee under this section. The district court shall tax and collect that fee as part of the costs of the action." 49 U.S.C. § 14704(e). In addition to attorney fees, plaintiff as the prevailing party is entitled to recover his costs as provided in Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920. 28 U.S.C. § 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript
     necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fee for exemplification and copies of papers necessarily obtained for use in the
     case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and
     salaries, fees, expenses and costs of special interpretation services under section
     1828 of this title.

Ledar argues that it should only be liable for the costs set forth in § 1920 and not for any additional expenses because § 14704(e) contains no provision for including expenses in the costs shifted to defendant. In support of this argument Ledar cites to Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 889 (8th Cir. 2006). This case states, "[d]istrict courts may award costs to a prevailing party. Fed.R.Civ.P. 54(d). However, such costs must be set out in 28 U.S.C. § 1920 or some other statutory authorization. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 438, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)."

Plaintiffs however in their reply suggestions state that the defendants' position has recently been rejected by the Eighth Circuit. In Sturgill v. United Parcel Service, Inc., 512 F.3d 1024 (8th Cir. 2008), the defendant argued that the district court had erred

in including attorney travel and private process server expenses in its award of costs because these were not recoverable costs under § 1920. However, the Eighth Circuit stated:

> The district court rejected UPS's contention because other circuits have construed § 2000e-5(k) as allowing the award of "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client." . . . We conclude that this rule is consistent with the Supreme Court's decision in Missouri v. Jenkins, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), as construed in W.Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 99-100, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). UPS does not argue that the expenses in question are not normally charged to fee-paying clients. Accordingly, the district court did not abuse its discretion in awarding these costs.

Id. at 1036 (internal citations omitted).

Plaintiffs in their Motion for Attorneys Fees and Costs separated the fees by category, such Pre-Trial Investigations, Pre-Trial Interviews, Pre-Trial Drafting, etc. However, plaintiffs did not break down their expenses in terms of the types of expenses they are seeking to recover, such as: airfare, travel expenses, trial expenses, copy costs, postage, telephone charges and fax charges. Before determining what costs should be awarded, the Court would like the plaintiffs to submit a list of their expenses by category. Plaintiffs shall submit the list of their expenses to the Court on or before **Friday April 10, 2009**. The Court will defer making a final determination on this issue until after the expenses have been reviewed.

### B. Motion to Compel

Plaintiffs served on defendants post-judgment document requests and interrogatories. Plaintiffs are seeking information regarding the assets of defendants for the purpose of commencing collection efforts for the amounts due under the Judgment. When defendants responded, they provided only a one sentence statement that the

defendants were asserting their "Fifth Amendment privilege against self-incrimination guaranteed by the Fifth Amendment of the United States Constitution and Article I, Section 19 of the Missouri Constitution." Plaintiffs argue that the defendants cannot make a blanket assertion that the privilege applies to all the discovery requests. Rather, plaintiffs argue that the party must be specific as to the claim of privilege with request to each question asked or document requested. Defendants state that the cases cited by plaintiffs are not on point as they involve parties invoking their Fifth Amendment privilege in response to subpoenas from governmental agencies.
Additionally, defendants argue that once the right against self-incrimination has been asserted, a rebuttable presumption arises that the answer to the question posed might tend to incriminate the answering party. Plaintiffs can rebut this presumption by showing that the answer to the question cannot possibly tend to incriminate the answering party. Plaintiffs state that the defendants have arbitrarily invoked the privilege in this case and that the law does not allow for the blanket assertion of the privilege. Rather, plaintiffs state that the defendants are obligated to go through each individual document request and interrogatory and assert the privilege where applicable.

In State of Missouri ex rel. Jackson County Prosecuting Attorney v. Moorhouse, 70 S.W.3d 552 (Mo.App. 2002), the Court stated, "the trial court need not blindly accept the assertion of the privilege and may inquire as to whether it has a rational basis or has even been waived." Id. at 557. In State ex rel. Long v. Askren, 874 S.W.2d 466 (Mo.App. 1994), the Court also noted, "[t]he trial court can compel the witness to answer the question only after it finds, as a matter of law, that the witness' response to the question cannot possibly tend to incriminate the witness. . . .The trial court is given wide latitude in this determination." Id. at 472.

In their suggestions in opposition to the Motion to Compel, defendants state only that there are multiple criminal proceedings currently being prosecuted against the defendants. However, they go into no further detail regarding these prosecutions or what the current status is. Without more information, the Court is unable to make a determination regarding the Motion to Compel. Accordingly, defendants shall file a supplemental response on or before **Friday April 10, 2009**.

### III. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS IN PART** plaintiffs' Motion for Attorney Fees and Expenses (Doc. # 450).


Date: 03/24/09
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
United States District Judge